**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>v.<br><br>Grace Xunmei Li,<br><br>                Defendant. | No. CV-12-00482-PHX-DGC<br><br>**ORDER** |

Before the Court is the motion for judgment on the pleadings by Plaintiff the United States of America ("the Government"). The motion is fully briefed. For the reasons set forth below, the Court will deny the motion.[1]

**I.    Background.**

Defendant Grace Xunmei Li ("Li") was born in the People's Republic of China and is now a naturalized U.S. citizen. Doc. 16 at ¶ 3; Doc. 20 at ¶ 3. On February 11, 1997, Li married a naturalized U.S. citizen, Antony Bambrough ("Bambrough"). Doc. 16 at ¶ 7; Doc, 20 at ¶ 7. In 1997, Bambrough filed Form I-130, "Petition for Alien Relative," on Li's behalf, and at the same time Li filed an I-485 petition for adjustment of status with the former Immigration and Naturalization Service ("INS"). Doc. 16 at ¶ 8; Doc. 20 at ¶ 8. The INS approved both petitions and conditionally adjusted Li's status to that of a lawful permanent resident. Doc. 16 at ¶ 9; Doc. 20 at ¶ 9. Li gave birth to

---

[1] Defendant's request for oral argument is denied. The parties have amply addressed the issues and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Daphne Elizabeth Li-Chen on September 8, 1999. Doc. 16 at ¶ 10; Doc. 20 at ¶ 10. The child's birth certificate originally listed the father as Bambrough, but on November 9, 1999, Li amended the certificate to show Gang Chen ("Chen") as the father. *Id.* On July 10, 2000, Li and Bambrough jointly filed a Form I-751, "Petition to Remove the Conditions on Residence," with the INS. Doc. 16 at ¶ 11; Doc. 20 at ¶ 11.

On February 7, 2002, Li gave birth to Esther Jade Li-Chen, and the birth certificate listed Chen as the father. Doc. 16 at ¶ 12; Doc. 20 at ¶ 12. On March 21, 2002, the INS approved the Form I-751 petition and removed the conditions on Li's permanent residence. Doc. 16 at ¶ 13; Doc. 20 at ¶ 13.

Li participated in a mock marriage ceremony in California on July 5, 2002, but had no intention of legally marrying Chen, as she was still married to Bambrough at the time. Doc. 16 at ¶ 14; Doc. 20 at ¶ 14. Li and Bambrough divorced on March 9, 2004. Doc. 16 at ¶ 15; Doc. 20 at ¶ 15.

On September 24, 2004, Li filed a Form N-400 Application for Naturalization with the U.S. Citizenship and Immigration Services ("USCIS"). Doc. 16 at ¶ 17; Doc. 20 at ¶ 17. Part 3, Question G of the N-400 asked Li her "current marital status," and Li checked the box labeled "Divorced." Doc. 16 at ¶ 18; Doc. 20 at ¶ 18. Part 8, question A asked Li how many times she had been married, including annulled marriages, and she wrote "1." Doc. 16 at ¶ 19; Doc. 20 at ¶19. Part 9, questions A and B asked Li about her children, and Li provided no information in response. Doc. 16 at ¶ 20; Doc. 20 at ¶ 20. Part 10, question 15 asked Li if she had ever committed a crime or offense for which she was not arrested, and Li answered "No." Doc. 16 at ¶ 21; Doc. 20 at ¶ 21. Part 10, question 22(d) asked whether Li had ever been married to more than one person at the same time, and she answered "No." Doc. 16 at ¶ 22; Doc. 20 at ¶ 22. Part 10, question 23 asked Li whether she had ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal, and she answered "No." Doc. 16 at ¶ 23; Doc. 20 at ¶ 23.

On April 18, 2005, a USCIS officer interviewed Li regarding her naturalization

application to determine her eligibility for naturalization. Doc. 16 at ¶ 24; Doc. 20 at ¶ 24. Based on Li's statements under oath at this interview, as well as her Form N-400 application, Li's naturalization application was approved on April 18, 2005. Doc. 16 at ¶ 34; Doc. 20 at ¶ 34. On May 5, 2005, Li took the Oath of Allegiance to the United States, and USCIS admitted her to U.S. citizenship and issued her Certificate of Naturalization No. 28 687 569. Doc. 16 at ¶ 35; Doc. 20 at ¶ 35.

In June 2008, the Government filed a criminal complaint against Li and Chen alleging that they had fraudulently obtained naturalization in violation of 18 U.S.C. §§ 371 and 1425(b). Doc. 37-1, Ex. A. These charges carried with them automatic revocation of citizenship upon conviction. *See* 8 U.S.C. § 1451(e). The Government filed an Information and Superseding Information against Li, ultimately charging her with making a knowing false statement in relation to naturalization in violation of 18 U.S.C. § 1015(a). Doc. 37-2, Exs. F, G; Doc. 25-2, Ex. 2. This reduced charge did not require automatic revocation of citizenship upon conviction. After the Government amended its charges, Li pled guilty to violating § 1015(a). As part of the plea, Li agreed that, at her April 18, 2005 naturalization interview, she affirmed under "penalty of perjury that every statement contained in my naturalization petition was correct, knowing that certain statements in my naturalization petition, and specifically those described in the previous paragraph [relating to her marital status, marital history and children], were false or intentionally misleading." Doc. 25-3, Ex. 3 ("Plea Agreement") at ¶ 2. Li has advised the Court that she intends to challenge the validity of the criminal conviction that resulted from this plea. Doc. 43.

In this case, the Government filed a complaint to revoke Li's naturalization on March 8, 2012 (Doc. 1), and an amended complaint on July 19, 2012 (Doc. 16). The amended complaint alleges that the Court must revoke Li's citizenship based on any of the following six grounds: (1) Li illegally procured U.S. citizenship because she gave false testimony for the purpose of obtaining an immigration benefit during the statutory period and therefore lacked the requisite good moral character (Doc. 16 at 7-8); (2) Li

1 illegally procured her U.S. citizenship because her commission of a crime involving moral turpitude – false statements related to naturalization – precluded her ability to demonstrate the statutorily requisite good moral conduct (Doc. 16 at 8-9); (3) Li illegally procured her U.S. citizenship because her commission of a crime involving moral turpitude – bigamy – precluded her ability to demonstrate good moral conduct (Doc. 16 at 9-10); (4) Li illegally procured her U.S. citizenship because she committed unlawful acts that adversely reflect on her moral character – bigamy – during the statutory period (Doc. 16 at 10-11); (5) Li illegally procured her U.S. citizenship because she had an extra-marital affair that destroyed her marriage during the statutory period (Doc. 16 at 11-12); and (6) Li procured her U.S. citizenship by willful misrepresentation and by concealing her bigamous marriage and extra-marital children (Doc. 16 at 12-14). The Government seeks a judgment on the pleadings based on Count I (illegal procurement based on false testimony) and Count VI (willful misrepresentation).[2]

**II.    Legal Standard.**

"Judgment on the pleadings is proper when, taking all allegations in the pleadings as true and construed in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F. 3d 353, 360 (9th Cir. 2005); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) ("For the purposes of the [12(c)] motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."). Like a Rule 12(b)(6) motion to dismiss, a motion for judgment on the pleadings "is directed at the legal sufficiency of the opposing party's pleadings." *Ansel Commc'ns, Inc. v. Novell, Inc.*, No. C9721088RMWENE, 1999 WL 33298162, *2 (N.D. Cal. Mar.

---

[2] The Government's motion states that it seeks a judgment on the pleadings based on Counts I and IV (Doc. 25 at 2, n. 1), but Count VI of the amended complaint asserts a claim for willful misrepresentation, which is the second basis on which the Government seeks judgment on the pleadings. The Court therefore construes the motion as seeking a judgment on the pleadings based on Counts I and VI.

24, 1999); *see also Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, (9th Cir. 1989) (noting that motions filed pursuant to Rules 12(b) and 12(c) are "functionally identical" but for the time of filing). "Federal courts generally hesitate to grant judgment on the pleadings, because 'hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his claim or defense.'" *Carrasco v. Fiore Enters.*, 985 F. Supp. 931, 934 (D. Ariz. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d § 1368 (1990)).

Generally, the Court will not consider evidence or documents beyond the pleadings when ruling on a Rule 12(c) motion. Fed. R. Civ. P. 12(d); *see also Hal Roach Studios*, 896 F.2d at 1550. "[M]aterial which is properly submitted as part of [a pleading] may be considered," *Hal Roach Studios*, 896 F.2d at 1555 n. 19, and "a document is not 'outside' the [pleading] if the [pleading] specifically refers to the document and its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (*overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

In support of its amended complaint (Doc. 16), the Government submitted an affidavit showing good cause (Doc. 19, Ex. A). Attached to Li's answer (Doc. 20) was the Government's reply brief in a prior action against Chen (Doc. 20, Ex. A), and the Affidavit of Steven Greschner, the Chief Executive Officer of Hummingbird Defense Systems, Inc., for whom Li worked as a contractor (Doc. 20, Ex. B). Because these exhibits were submitted as part of the parties' pleadings, the Court will consider them in ruling on the Government's motion.

The Court may also take judicial notice of public records. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (Rule 12(b)(6) motion); *Lee v. City of L.A.,* 250 F.3d 668, 689-90 (9th Cir. 2001). Both the Government and Li ask the Court to take judicial notice of various documents, including court documents pertaining to Li's criminal conviction (Doc. 25-1, Exs. 1-4; Doc. 37-1, Exs. A, F-H), the birth

certificates of Li's children (Doc. 37-1, Exs. B, D), Li's affidavit and application for a license to marry Chen (Doc. 37-1, Ex. C), and Li's naturalization application (Doc. 37-1, Ex. E).  The Court will take judicial notice of these documents.

**III.     Facts Deemed Admitted for Purposes of the Government's Motion.**

The Government argues that judgment on the pleadings should be entered on the basis of judicial notice, collateral estoppel, and Li's admission to having been convicted of violating 18 U.S.C. § 1015(a).  Doc. 25 at 2-3.

    **A.     Judicial Notice.**

The Government asks Court to take judicial notice not only of the existence of the submitted records, but also of the truth of their underlying facts.  Doc. 25 at 3, n. 2.  To take judicial notice of prior court proceedings and the findings of that court as true, the evidence must satisfy the indisputably requirement of Federal Rule of Evidence 201(b).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Ev. 201(b).  Courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records."  *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 551 (C.D. Cal. 2011) (citing *Lee v. City of L.A.,* 250 F.3d 668, 690 (9th Cir.2001) (emphasis in original)).

In a criminal case where the conviction was the result of a guilty plea, judicial notice is limited to "the terms of a plea agreement or transcript of colloquy between judge and defendant."  *Shepard v. United States*, 544 U.S. 13, 20 & 26 (2005) (limiting the inquiry under the Armed Career Criminal Act to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense).  "[T]he 'better rule' is the one that treats the plea as 'an admission of only those facts that are essential to the conviction.'"  *Young v. Holder*, 697 F.3d 976, 988 (9th Cir. 2012) (quoting 1A C. Wright et al., *Federal Practice and Procedure* § 172 (4th ed.

2012)).³  Accordingly, in taking judicial notice of the public records related to Li's criminal conviction, the Court will not treat Li's guilty plea as an admission of every factual allegation in the superseding information (Doc. 25-2, Ex. 2), but as an admission of only those facts essential to the conviction.  Li pled guilty to violating § 1015(a) and, in her plea agreement, confirmed "that the elements of the offense [we]re as follows:  (1) I knowingly made a false statement under oath; (2) in a matter relating to naturalization or citizenship under the laws of the United States."  Doc. 25-3 at 2-3.  After reviewing the plea agreement, the Court will treat the following admission as true in this proceeding:

> On April 18, 2005, I appeared for an interview with a CIS adjudicator in San Jose, California.  During that interview, among other false statements, I stated under penalty of perjury that every statement contained in my naturalization petition was correct, knowing that certain statements in my naturalization petition, and specifically those described in the previous paragraph [relating to marital status, marital history and children], were false or intentionally misleading.

*Id.* at 3.

This portion of Li's plea agreement admitted facts essential to her conviction. Other factual allegations made in the superseding information (Doc. 25-2, Ex. 2) do not appear essential to the conviction.  The Court's judicial notice of the superseding information and other public records thus serves only to establish their existence.

**B.     Collateral Estoppel.**

The doctrine of collateral estoppel prevents relitigation by the parties of identical issues actually litigated and necessarily decided in a prior action.  *Parklane Hosiery Co.*

---

³ The Government cites *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 857 (9th Cir. 2004), *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1197 (9th Cir. 2006), and *United States v. Hernandez-Hernandez*, 431 F.3d 1212, 1218-19 (9th Cir. 2005), for the proposition that "[b]y pleading guilty, a defendant admits the factual allegations of the indictment or information."  Doc. 25 at 4, n. 4.  In *Young v. Holder*, 697 F.3d 976, 986-87 (9th Cir. 2012), however, the Ninth Circuit abrogated this line of cases and held that "when a conjunctively phrased charging document alleges several theories of crime, a guilty plea establishes conviction under at least one of those theories, but not necessarily all them . . . [and] admission of any one of those theories constitutes an admission of each and every element required to establish the offense."

*v. Shore,* 439 U.S. 322, 326 n. 5 (1979); *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1357 (9th Cir.1985). "Federal law governs the collateral estoppel effect of a federal case decided by a federal court." *Fireman's Fund Ins. Co. v. Int'l Mkt. Place*, 773 F.2d 1068, 1069 (9th Cir. 1985) (citing *Blonder-Tongue Labs. v. Univ.of Ill. Found.*, 402 U.S. 313, 324 n. 13 (1971)). The party asserting the doctrine bears the burden of showing that "the estopped issues are identical to issues litigated in the prior action." *Resolution Trust Corp. v. Keating,* 186 F.3d 1110, 1116 (9th Cir. 1999).

"Although it is settled law in this circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit, preclusion has only been allowed where an element of the crime to which the defendant pled guilty or of which he was convicted was at issue in the second suit." *United States v. Section 18*, *Twp. 23, Range 9, Sunnyview Plat, Lots 4 & 5, Block 4, Lakeview Dr., Quinault Lake, Olympic Nat. Park, Grays Harbor Cnty., WA.*, 976 F.2d 515, 519 (9th Cir. 1992) (citations omitted). The following criteria are used to analyze issue preclusion in a case involving a criminal matter:

> (1) the prior conviction must have been for a serious offense so that defendant was motivated to fully litigate charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom collateral estoppel is asserted was party or in privity with party to prior trial.

*Section 18*, 976 F.2d at 518 (citing *Ayers v. City of Richmond,* 895 F.2d 1267, 1271 (9th Cir. 1990)).

The Government's assertion of collateral estoppel is based on Li's prior conviction for knowingly making a false statement under oath in a matter relating to naturalization in violation of 18 U.S.C. § 1015(a). Doc. 25 at 12. The Government states that the issues in this action "are identical" to those in the prior action "in that both rely on the falsity of Li's representations in the course of her naturalization proceedings." Doc. 25 at 12. The

Government states that this issue was actually litigated because it resulted in a guilty plea, and that the determination that Li knowingly made a false statement was critical to her conviction because the elements of a § 1015(a) violation include knowingly making a false statement under oath in a proceeding relating to naturalization. *Id.*

The Court finds that the Government has not met its burden in establishing that the issues in this action are identical to the issues decided by Li's guilty plea. The Government must do more than conclusively state that the issues "are identical."

### C. Li's Admission to Having Pled Guilty to Violating 18 U.S.C. § 1015(a).

Li admitted that she pled guilty to violating 18 U.S.C. § 1015(a). Doc. 16 at ¶ 52; Doc. 20 at ¶ 52. Li's answer clarifies that she admits only to "'statement' (singular) not 'statements' (plural)," and that she "pled guilty to this offense because she believed 'knowingly' meant that she knew at the time of the plea not at the time of the application." Doc. 20 at ¶ 52. The Court has taken judicial notice of the fact that Li knowingly made a false statement and will not consider Li's conflicting contentions here. The court is not required to accept as true allegations contradicted by judicially noticed facts. *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987); *see also Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) ("The collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts."). Accordingly, in ruling on the Government's motion, the Court will accept as true the fact that Li "knowingly ma[de] [a] false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of the law of the United States relating to naturalization, citizenship, or registry of aliens." 18 U.S.C. § 1015(a).

### IV. Discussion.

American citizenship is a precious right, the loss of which "can have severe and unsettling consequences." *United States v. Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007) (quoting *Fedorenko v. United States*, 449 U.S. 490, 505 (1981)); *see also Klapprott v. United States*, 335 U.S. 601, 616 (1949). Therefore, "[i]n a denaturalization proceeding, the government bears the heavy burden of providing 'clear, unequivocal, and convincing'

evidence that citizenship should be revoked." *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012) (quotation marks and citations omitted); *see also Schneiderman v. United States*, 320 U.S. 118, 122 (1943) ("[Citizenship] once conferred should not be taken away without the clearest sort of justification and proof."). Under this exacting standard, summary judgment, and in turn judgment on the pleadings, "should not be granted lightly." *Arango*, 670 F.3d at 992.

The denaturalization statute, 8 U.S.C. § 1451(a), permits the government to revoke citizenship if naturalization was (1) "illegally procured" or (2) "procured by concealment of a material fact or by willful misrepresentation." *Arango*, 670 F.3d at 992-93; *Dang*, 488 F.3d at 1139. The government argues that it is entitled to judgment on the pleadings under both grounds: illegal procurement based on false testimony (Count I) and willful misrepresentation (Count VI). Doc. 25 at 2, n. 1.

**A.     Count I.**

Failure to comply with all congressionally imposed prerequisites to the acquisition of citizenship renders a certificate of citizenship "illegally procured." *Fedorenko*, 449 U.S. at 506. "In order lawfully to obtain U.S. citizenship, a person must be of 'good moral character' for the five years immediately preceding the date of filing her citizenship application, as well as from the date of filing this application until the date she or he is admitted to citizenship." *Dang*, 488 F.3d at 1139; *see also* 8 U.S.C. § 1427(a). "Under 8 U.S.C. § 1101(f), a person shall not 'be regarded as, or found to be, a person of good moral character' if, within the statutory period, he or she fell into any of the seven enumerated categories." *Dang*, 488 F.3d at 1139. These categories include "one who has given false testimony for the purpose of obtaining" immigration or naturalization benefits. 8 U.S.C. § 1101(f)(6). Section 1101(f)(6) does not include a materiality requirement for false testimony, *Kungys v. United States*, 485 U.S. 759, 779 (1988), but "'testimony' is limited to oral statements made under oath" and must have been given "with the subjective intent of obtaining immigration benefits." *Id.* at 780.

### 1. Statutory Time Period.

The Government contends that Li was required to demonstrate good moral character from September 4, 1999, through May 5, 2005. Doc. 25 at 8. Li admits that she was interviewed by a USCIS officer on April 18, 2005 (Doc. 16 at ¶ 24; Doc. 20 at ¶ 24). The Government contends that Li gave false testimony during this interview and thus was not a person of good moral character during the statutory time period. Li denies that the interview took place during the statutory time period. Doc. 20 at ¶ 54; Doc. 16 at ¶ 54. Li did admit, however, that she filed her Form N-400 application for Naturalization on September 24, 2004 (Doc. 16 at ¶ 17; Doc. 20 at ¶ 17), and that she was admitted to U.S. citizenship on May 5, 2005 (Doc. 16 at ¶ 25; Doc. 20 at ¶ 25). Thus, according to the pleadings and 8 U.S.C. § 1427(a), the Court finds that the statutory time period ran between September 24, 1999, five years prior to the date Li submitted her N-400 application, and May 5, 2005, the date of her admission to citizenship. Because the April 18, 2005 interview took place during this period, it occurred within the statutory time period.

### 2. False Testimony.

Except for admitting that she was convicted of violating 18 U.S.C. § 1015(a) (Doc. 20 at ¶ 52; Doc. 16 at ¶ 52), Li's answer denies the factual allegations underlying Count I (Doc. 20 at ¶¶46-51, 53-47). Specifically, Li denies having made a false statement under oath during the April 2005 interview (Doc. 20 at ¶¶ 25, 47), but the Court accepts the allegation of a false statement as true based on Li's judicially noticed plea agreement and the elements of § 1015(a).

Li also denies that she made any oral false statement during the interview as required to satisfy the false "testimony" requirement for revocation of citizenship under 8 U.S.C. § 1101(f)(6). Doc. 20 at ¶ 47; *Kungys*, 485 U.S. at 780. While Li did admit in her plea agreement to having "stated under penalty of perjury that every statement contained in my naturalization petition was correct, knowing that certain statements in my naturalization petition . . . were false or intentionally misleading" (Doc. 25-3 at 3), and

the Court thereby could infer that a false statement was made during the oral interview in April of 2005, the Court may take judicial notice of the truth of only those facts essential to a conviction under § 1015(a), *Young*, 697 F.3d at 988, and an oral false statement is not required, *United States v. Youssef*, 547 F.3d 1090, 1091-93 & 1095 (9th Cir. 2010) (affirming conviction under § 1015(a) for knowingly making a written false statement in an immigration application). The Court therefore cannot take judicial notice of the fact that Li made an oral false statement during the statutory period.[4]

Moreover, the Government's amended complaint fails to allege the one false statement the Court could view as having been made orally – Li's statement that "every statement contained in my naturalization petition was correct." Doc. 25-3 at 3. The amended complaint alleges only that Li "made several false statements and material omissions in her *application* for naturalization." Doc. 16 at ¶ 53 (emphasis added); *see also* Doc. 16 at ¶¶ 48-51.

The Government has failed to establish in its motion for judgment on the pleadings that Li provided false testimony within the meaning of 8 U.S.C. § 1101(f)(6). The Court therefore will deny the motion on Count I.

**B.     Count VI.**

Under 8 U.S.C. § 1451(a)'s second basis for denaturalization, the misrepresentations or concealments must be both willful and material. *Kungys*, 485 U.S. at 767. "So understood, the provision plainly contains four independent requirements: the naturalized citizen must have misrepresented or concealed some fact, the misrepresentation or concealment must have been willful, the fact must have been material, and the naturalized citizen must have procured citizenship as a result of the

---

[4] The Government argues in its reply brief that the Court must infer that the statement was made orally because naturalization interviews must be conducted orally, *see* 8 C.F.R. §§ 316.14(a), 335.2(c), and the Court must infer that such interviews are conducted in accordance with applicable regulations, *Brown v. Plata*, 131 S.Ct. 1910, 1965 (2011). The Court will not consider arguments raised for the first time in a reply brief. *Bach v. Forever Living Prods. United States, Inc.,* 473 F. Supp. 2d 1110, 1122 n. 6 (W.D. Wash. 2007) (citing *Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837 n. 6 (9th Cir. 2004)); *see Gadda v. State Bar of Cal.,* 511 F.3d 933, 937 n. 2 (9th Cir. 2007).

misrepresentation or concealment." *Id*.

### 1. Misrepresented or Concealed Some Fact.

The Government argues that the first element is established by Li's guilty plea and conviction. Doc. 25 at 16. Li contends that she did not make a misrepresentation or a concealment of fact, and that the Government is wrong as a matter of fact and law in arguing that she misrepresented facts concerning her marital status and marital history because she never intended to marry Chen. Doc. 37 at 22. The Court agrees with the Government and finds that Li's conviction for making a false statement establishes this element.

### 2. Willfulness.

"[A]n alien who seeks to obtain immigration status by misrepresenting a material fact has done so 'willfully' if the misrepresentation was deliberate and voluntary." *Arango*, 670 F.3d at 995 (quoting *Espinoza-Espinoza v. INS*, 554 F.2d 921, 925 (9th Cir. 1977) (noting that intent to deceive is not required and that knowledge of the falsity of a representation is sufficient)). The Government argues that Li's conviction for knowingly making a false statement in violation of 18 U.S.C. § 1015(a) establishes that she did so willfully for purposes of 8 U.S.C. § 1451(a). Doc. 25 at 16. Li contends that this does not follow, and cites *Bryan v. United States*, 524 U.S. 184, 191-94 (1998), for the proposition that "willfully" and "knowingly" are distinct terms. Doc. 37 at 22-23. The Court disagrees with Li.

*Bryan* dealt with "willfully" and "knowingly" in a criminal context unrelated to an immigration proceeding. In *Forbes v. INS*, the Ninth Circuit determined that the requirement of a willful misrepresentation was established by the petitioner having been aware that he should have answered differently. 48 F.3d 439, 442 (9th Cir. 1995). In *Arango*, the Ninth Circuit found that a willful misrepresentation had not been established where the petitioner believed that the immigration officer had read his file and was aware of the fraudulent nature of his marriage, and therefore failed to bring up the topic during his naturalization interview. 670 F.3d at 995. Unlike *Arango*, Li admitted to knowingly

making a false statement, an admission sufficient to show that she acted deliberately, voluntarily, and willfully.

### 3. Materiality.

A misrepresentation or concealment is material to one's naturalization if clear, unequivocal, and convincing evidence shows that that the misrepresentation or concealment "ha[s] a natural tendency to produce the conclusion that the applicant was qualified." *Kungys*, 485 U.S. at 772 ("predictably capable of affecting" or "natural tendency to influence"). Materiality under § 1451(a) is an issue of law. *Id.* In *United States v. Puerta*, the Ninth Circuit applied a heightened materiality requirement in the context of denaturalization and held that the Government must also produce sufficient evidence to raise a fair inference that the applicant was ineligible. 982 F.2d 1297, 1303-04 (9th Cir. 1992).

The Court finds that the disclosure of Li's marital history would predictably have had a natural tendency to influence the decision of the USCIS. In seeking to raise a "'fair inference' of ineligibility," *id.* at 1304, the Government contends that Li concealed her bigamous marriage and that bigamy is a crime involving moral turpitude, a disqualifying act. Doc. 25 at 17. Li responds that she did not commit bigamy, and, even if she had, bigamy is not a disqualifying crime of moral turpitude. Doc. 37 at 24-25.

Bigamy is a crime of moral turpitude, *Gonzales-Martinez v. Landon*, 203 F.2d 196, 197 (9th Cir. 1953), but the Government has not identified the specific criminal bigamy statute Li allegedly violated (Doc. 37 at 19, n. 13). If it is California law, the parties appear to agree that bigamy under California law requires intent (Doc. 42 at 13; Doc. 37 at 18; *see* CAL. FAM. CODE § 2201, and *People v. Vogel*, 299 P.2d 850 (Cal. 1956) (one must have "wrongful intent" to commit bigamy")), and Li denies that she ever intended to commit bigamy (Doc. 37 at 18-19). Given this record, the Court cannot conclude, merely from the fact of two marriages, that Li committed bigamy under an unspecified statute and thereby draw the inference that she was ineligible to naturalize. The inference may be reasonable on a more complete record, but the Court cannot draw it

- 14 -

on the basis of these pleadings. The Government argues that Li's denial of an intent to commit bigamy is not plausible, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), but the Court cannot reach such a plausibility conclusion on the basis of these pleadings, particularly when it must construe the pleadings in favor of Li and against the Government. *Living Designs, Inc.*, 431 F. 3d at 360.

The Court concludes that the Government has not met its burden of establishing the materiality of the false statement. The Court will deny the motion for judgment on the pleadings on Count VI.

**IT IS ORDERED** that the Government's motion for judgment on the pleadings (Doc. 25) is **denied**.

Dated this 14th day of January, 2013.

_____
David G. Campbell
United States District Judge