**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-12-00482-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Grace Xunmei Li, | |
| Defendant. | |

     Defendant Grace Xunmei Li and Plaintiff United States of America ("the government") have both filed motions for summary judgment. Docs. 134, 157. The motions have been fully briefed, and the Court held oral argument on February 27, 2014. For the reasons stated below, the Court will deny the government's motion and grant Defendant's motion in part.

## I.     Background.

     Li came to the United States in 1995 at the age of 25. Docs. 134 at 1, 151 at 8. Li met Antony Bambrough early that year at a swimming pool in Fort Lee, New Jersey. Doc. 135, ¶ 13, Doc. 151 at 8. The couple became romantically involved and were married two years later in February of 1997. Doc. 135 ¶¶ 14-18.

     Li met Gang Chen in May of 1997. *Id*., ¶ 20, Doc. 161 at 16. Although the exact date on which their relationship became romantic is disputed, Li asserts that she and Chen began an affair in December 1998. Doc. 135, ¶ 20. Li alleges that "sometime" in 1998 she moved out of the house that she and Bambrough shared as a residence in Fort

Lee, New Jersey, though the parties disagree on why she left.  Doc. 161, ¶ 30.  In August of 1998, Li and her mother purchased a house in Fort Lee where, according to Chen, he would "sometimes" stay.  Doc. 161, ¶¶ 32-34.

Although she remained married to Bambrough, over the next several years Li gave birth to two daughters fathered by Chen.  Doc. 135, ¶¶ 7-8.  In 1999, before the birth of her first daughter, Li informed Bambrough, who was still her husband at the time, that the child she was expecting was not his.  *Id*., ¶ 21, Doc. 161 at 20.  The first daughter of Li and Chen was born in September 1999.  Doc. 135, ¶ 27.

Li, Chen, and their daughter moved to California in 2000.  Doc. 161, ¶¶ 72-73.  They made an offer on a house together in December of that year.  *Id*., ¶ 76.  In 2002, Li gave birth to a second daughter, also fathered by Chen.  *Id*., ¶ 28.  At some point before July 5, 2002, Li and Chen went to the Santa Clara County Clerk's office and applied for a marriage license.  *Id*., ¶¶ 42-43.  On July 5, 2002, Li and Chen participated in a church wedding ceremony with family and friends that was presided over by a Lutheran pastor flown in from out of state.  *Id*., ¶¶ 38, 41.  The couple then hosted a post-ceremony banquet for their guests.  *Id*., ¶ 38.  The pastor who performed the ceremony believed the marriage was legitimate.  *Id*., ¶ 42.  After the ceremony, a copy of the marriage license was sent to and recorded by the Santa Clara County Recorder's Office.  *Id*., ¶ 50.  Li was fully aware that she was married to Bambrough at the time of the ceremony with Chen.  *Id*., ¶ 35.

The government asserts that Li and Chen thereafter represented themselves as husband and wife in a series of contracts and legal documents.  Doc. 151 at 10-11.  For example, the government submits evidence that they purchased a house, replied to a legal complaint under penalty of perjury, refinanced a home, submitted a residential loan application, purchased a second house, and filed tax returns, all as husband and wife.  Doc. 152, ¶¶ 119-147.  Li provides no evidence to the contrary, nor does she dispute the validity of the documents cited by the government.  Despite her relationship with Chen, Li remained married to Antony Bambrough until they divorced in 2004.  Doc. 135, ¶ 52.

Eight months after her divorce from Bambrough, on September 24, 2004, Li submitted an N-400 application for naturalization to become a U.S. citizen. *Id.*, ¶ 57. Li represented on the application that she was (1) divorced, (2) childless, (3) had been married only once, (4) had never committed a crime or offense for which she was not arrested, and (5) had never been married to more than one person at a time. *Id.*, ¶ 59. On April 18, 2005, Li met with Officer Que-Huong Nguyen for her naturalization interview. *Id.*, ¶ 60. Li's application for naturalization was approved that day and Li became a U.S. citizen on May 5, 2005. *Id.*, ¶ 60-62.

In 2008, Li was charged with conspiracy to commit naturalization fraud under 18 U.S.C. § 371 and unlawful procurement of naturalization of citizenship under 18 U.S.C. § 1425. Li pled guilty in August of 2009 in the United States District Court for the Northern District of California to a violation of 18 U.S.C. § 1015(a). *Id.*, ¶¶ 65-70. The elements of this offense included (1) knowingly making a false statement under oath, (2) in a matter relating to naturalization or citizenship under the laws of the United States. *Id.*, ¶ 74. Li's plea agreement included the following factual basis for her plea:

> On September 24, 2004, while living in San Jose, California, I submitted a petition for naturalization to the United States Citizenship & Immigration Services (CIS). In that petition, I knowingly made the following false statements and omissions: (1) I claimed to be "divorced," when in fact I was married at the time to Gang "Steven" Chen ("Chen"); (2) I omitted that I had any children, when in fact I had two children with Chen; (3) I claimed that I had been married only once – referring to my prior marriage to a man identified in the Superseding Information by his initials, A.B. – when in fact I had been married twice; and (4) I responded "No" to a question asking whether I had ever been married to more than one person at the same time, when in fact, between July 5, 2002 and March 9, 2004, I was married to both Chen and A.B.
>
> On April 18, 2005, I appeared for an interview with a CIS adjudicator in San Jose, California. During that interview, among other false statements, I stated under penalty of perjury that every statement contained in my naturalization petition was correct, knowing that certain statements in my naturalization petition, and specifically those described in the previous paragraph were false or intentionally misleading.

*Id*. at 7.

At the sentencing hearing in December 2009, the district judge engaged in a lengthy colloquy with Li regarding her guilty plea.  Docs. 135, ¶¶ 73-79; 158-8.  Li initially maintained that she believed her marriage to Chen was not valid.  Doc. 158-8 at 111.  After a lengthy and somewhat confusing explanation from the judge, Li was asked to affirm her admissions and said simply: "I admit to the – I admit that I knowingly made a false statement."  Doc. 15-8 at 114.  Li did not specify which "false statement" she made.  The prosecutor said that Li's admission was "close enough," and the judge sentenced Li to probation and a $500 fine.  *Id*. at 114, 116, 118.

## II.    Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 992 (9th Cir. 2012).  Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a denaturalization proceeding, the government bears the "heavy burden" of providing "clear, unequivocal, and convincing" evidence that citizenship should be revoked.  *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012) (citing *United States v. Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007)).  The government's evidence justifying denaturalization must "not leave the issue in doubt."  *Dang*, 488 F.3d at 1139.

In short, "summary judgment for the government in a denaturalization proceeding is warranted in narrow circumstances: if, viewing the evidence in the light most favorable to the naturalized citizen, there is no genuine issue of material fact as to whether clear, unequivocal, and convincing evidence supports denaturalization." *Arango*, 670 F.3d at 992.

## III.   Judicial Notice.

The government argues that Li's guilty plea in her prior criminal case is a final decision that establishes the facts admitted by Li, including her false statements, false testimony in her naturalization interview, and her bigamous marriage to Chen. Doc. 157 at 13-15. Li argues that the guilty plea does not have preclusive effect in this subsequent civil immigration action. Doc. 160 at 7-8.

It is "settled law in this circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit." *United States v. Real Prop. Located at Section 18*, 976 F.2d 515, 519 (9th Cir. 1992) (citing *United States v. $31,697.59 Cash*, 665 F.2d 903 (9th Cir. 1982); *United States v. Bejar-Matrecios*, 618 F.2d 81 (9th Cir. 1980)). The Ninth Circuit has applied this principle in disposing of arguments in immigration cases that attempt to re-litigate prior criminal convictions. *See, e.g.*, *Granados-Mondragon v. I.N.S.*, 28 F. App'x 695 (9th Cir. 2002).

In ruling on the government's motion for judgment on the pleadings, the Court held that *Young v. Holder* requires that we "treat[] the plea as 'an admission of only those facts that are essential to the conviction.'" Doc. 45 at 6 (citing 697 F.3d 976, 988 (9th Cir. 2012). Although this rule might not apply to a criminal conviction like Li's that included a detailed factual admission in the plea agreement, the record from Li's conviction is more complicated. As noted above, Li engaged in a colloquy with the judge about what precisely she was admitting. Doc. 135-2 at 52. Li's counsel raised concerns about whether or not Li engaged in the acts described in the plea agreement, and the judge provided a lengthy explanation before asking what Li was admitting. *Id*. at 55. She responded: "I admit that I knowingly made a false statement," without identifying the false statement. Doc. 158-8 at 114.

The government seeks Li's denaturalization based on allegations that she gave false testimony during her naturalization interview, lied on her naturalization application, and was bigamously married to Gang Chen, among others.  Although Li's written plea agreement contained admissions of each of these acts, the colloquy with the judge left an imprecise record as to the specific basis for her conviction.  At the key moment, when the judge sought to confirm that there was a factual basis for conviction, Li admitted only to making "a false statement," an admission the prosecutor said was "close enough."  The judge proceeded on the basis of that admission.

From this record, the Court cannot take judicial notice of Li's admission to all of the false statements set forth in her plea agreement.  "[O]nly matters *necessarily decided* in the prior action are barred from relitigation by collateral estoppel," *Section 18*, 976 F.2d at 519 (emphasis added), and the only matter necessarily decided prior to conviction was that Li knowingly made an unspecified false statement.  As a result, the Court takes judicial notice only of this admission.[1]

## IV.   Analysis.

The government seeks to denaturalize Li under 8 U.S.C. § 1451(a).  This statute provides that the Court must order the revocation of a person's naturalization certificate if (1) the naturalization was illegally procured, or (2) the naturalization was procured by concealment of a material fact or by willful misrepresentation.  The government asserts six claims against Li that show that she either illegally procured her naturalization or procured it through willful misrepresentation and concealment of material facts.  Those claims include the following: (1) Li gave false testimony during her naturalization interview; (2) Li's conviction under §1015(a) in the criminal case was a crime involving moral turpitude that precluded her naturalization; (3) Li committed bigamy, which is a crime involving moral turpitude; (4) Li committed bigamy, which is an unlawful act that reflected poorly on her moral character and precluded her from naturalizing; (5) Li had an

---

[1] This conclusion will not necessarily prevent the Court from considering the detailed admissions in her plea agreement as evidence during trial, assuming they are admissible.

extra-marital affair which tended to destroy her marriage to Bambrough and evidenced bad moral character; and (6) Li willfully misrepresented and concealed material facts in her naturalization application. Doc. 16.

Counts I through V concern the first prong of 8 U.S.C. § 1451(a) – that Li illegally procured her naturalization. A certificate of citizenship is "illegally procured" when the applicant fails to comply with all congressionally-imposed prerequisites to the acquisition of citizenship. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). One of those prerequisites is that a person be "of good moral character" during a period from five years before filing an application for naturalization until the date the person takes the oath of allegiance to become a citizen. 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1). Count VI concerns the second prong of § 1415(a) and alleges that Li procured her citizenship by willfully concealing and misrepresenting her marital status and the existence of her extramarital children. The Court will address each count separately.

**A.     Count I – False testimony.**

Being of good moral character is a congressionally-imposed prerequisite to citizenship. "Under 8 U.S.C. § 1101(f)(6), a person shall be deemed not to be of good moral character if he has given false testimony for the purpose of obtaining immigration or naturalization benefits." *Kungys v. United States*, 485 U.S. 759, 779 (1988). The false statements need not be material, but they must be false, made orally and under oath, and made for the purpose of obtaining an immigration benefit. *Id*.

The government alleges Li gave false oral testimony during her naturalization interview on April 18, 2005 in response to four different questions. Doc. 16 at 7. Specifically, the government asserts that Li testified she (1) had no children, (2) was divorced, (3) had only been married once, and (4) had never committed a crime for which she had not been arrested. *Id*. The government argues that Li lied about each of these subjects during her naturalization interview. Doc. 151 at 20.

Li appeared for her naturalization interview and gave oral testimony under oath. Doc. 135,¶ 60; Doc. 152, ¶ 157. Li's interview took place during the statutory period in

which she was required to be of good moral character.[2]   Li argues, however, that the government cannot show by clear and convincing evidence that the questions which Li allegedly answered falsely were asked during the interview.  Doc. 160 at 9.  She supports this contention by noting that the Court may not take judicial notice of her plea agreement in which she admitted making these false statements.  *Id.*

The Court has taken judicial notice only of Li's admission that she made a false statement.  The Court does not know whether that statement was made in her application for naturalization or during her interview because that fact was not specified in the colloquy.   The Court therefore cannot conclude that Li's admitted false statement satisfies the oral testimony requirement in Count I.

Although no audio or video recording of Li's interview with Officer Nguyen is available, and Nguyen cannot recall the interview, the government argues that there is no question that Nguyen asked Li about her marital status and her children.  Relying on Nguyen's testimony and the government's established procedures for such interviews, the government asserts that Nguyen made red ink annotations on Li's N-400 form on each question asked of Li, including questions about Li's marital status and children.  Doc. 157 at 21.  In response, Li relies on the expert report of an immigration attorney who has attended dozens of such naturalization interviews and who declares that while "[i]t is common for interviewers to make marks on N-400 applications during an interview . . . not every mark . . . is consistent with a specific question being asked or answered."  Doc. 172-1 at 13.  According to Li's expert, such marks "do not necessarily mean a question was asked orally or that an oral answer to a question was given during the interview."  *Id.*

The Court concludes that a material issue of fact exists as to whether Li was asked the relevant questions and provided oral testimony in response.  As a result, the Court cannot grant summary judgment for the government.  The same factual issue precludes summary judgment for Li on this claim.

---

[2] This period for Li ran from September 24, 1999, five years before she submitted her N-400 application, until May 5, 2005, the date of her admission to citizenship.

**B.      Count II – Conviction under 18 U.S.C § 1015(a).**

The government argues that a violation of 18 U.S.C. § 1015(a) is a crime involving moral turpitude, and that Li's conviction of that crime establishes that she was not of good moral character and was statutorily ineligible for naturalization.  Docs. 16 at 8-9, 151 at 29, 38.  Li argues that a violation of § 1015(a) is not a crime involving moral turpitude.  Doc. 134 at 28.

In determining whether a crime is one of moral turpitude, the Court must examine, first, what offense the petitioner was convicted of committing, and second, whether such conduct is a crime involving moral turpitude as defined in the applicable section of the Immigration and Naturalization Act ("INA").  *Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009).  The Court has taken judicial notice that Li committed a violation of § 1015(a) by knowingly making a false statement.  A crime involving moral turpitude is defined as a crime "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2012).  Such crimes generally involve fraud or grave acts of baseness or depravity.  *Id.*

The government argues that Li's violation of § 1015(a) is, by its very nature, a crime involving moral turpitude because an intent to defraud is implicit in making a false statement on a naturalization application and is akin to perjury in the immigration context.  Doc. 151 at 39-40.  Li responds that she did not plead guilty to fraud, which was initially charged.  Doc. 160 at 2.  She also argues that her plea was not knowingly made, and that the crime does not carry sufficient bad intent to constitute a crime involving moral turpitude.  *Id.*

The parties have not identified, nor has the Court found, any authority dictating whether violation of § 1015(a) constitutes a crime involving moral turpitude.  Courts generally apply a categorical approach when answering this question, looking first to the statutory definition of the offense to see if it fits into one of the two identified categories, fraud or grave acts of baseness and depravity.  *Totaktly v. Ashcroft*, 371 F.3d 613, 620

(9th Cir. 2004).  "If it is not clear from the statutory definition whether the offense is a qualifying offense, we apply the modified categorical approach, in which we may look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction," including the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of plea proceedings and the judgment.  *Notash v Gonzales*, 427 F.3d 693, 697 (9th Cir. 2005) (citing *Ferreira v. Ashcroft*, 390 F.3d 1091, 1095 (9th Cir. 2004) (internal cites omitted)).  "If the record of conviction does not establish that the offense is a qualifying offense, the government has failed to meet its burden."  *Id.* at 697.

"Not all false statements to the federal government are crimes of moral turpitude." *Fetamia v. Ridge*, 3-03-CV-2841-BD, 2004 WL 1194458 (N.D. Tex. May 27, 2004). And while the elements of the crime at issue here do require that a party knowingly make false statements, the Ninth Circuit has held that "[w]illfulness alone . . . does not categorically indicate an intent to defraud."  *Notash*, 427 F.3d at 698.

## 1.    Categorical approach.

A person violates § 1015(a) if he or she (1) "knowingly makes any false statement under oath, (2) in any case, proceeding, or matter relating to . . . naturalization, citizenship or registry of aliens."  The statute does not explicitly require fraudulent conduct on the part of the perpetrator, nor does it explicitly require that the perpetrator take the prohibited action in order to derive a benefit of some sort.

Where the intent to defraud is inherent in the nature of a crime, the crime is one of moral turpitude even if there is no express element of fraud.  *Tijani v. Holder*, 628 F.3d 1071, 1076 (9th Cir. 2010).  Courts have found an inherent fraud requirement when a criminal statute requires specific intent that a false statement be relied upon.  For example, the court in *Tijani* found inherent fraud in a statute that required "knowingly mak[ing] or caus[ing] to be made . . . any false statement in writing, *with intent* that it shall be relied upon . . . for the purpose of procuring [payment]."  *Id*. at 1075 (emphasis added).  In *Carty v. Ashcroft*, 1081 (9th Cir. 2005), the Ninth Circuit found fraud inherent

in a tax evasion statute that made it a crime for a person to "willfully fail[] to file any return or to supply any information *with intent to evade* any tax[.]" *Id*. at 1083 (emphasis added). The *Carty* court found that the use of the word "evade" was so wound up with fraud that a violation of the tax section was "tantamount and equivalent to an intent to defraud for deportation purposes." *Id*. at 1085.

Section 1015(a) does not require that a false statement be made with any particular intent. In fact, the statute does not even require that the false statements be made to influence the immigration process or procure an immigration  benefit – any false statements made "in relation to" an immigration proceeding will do. 18 U.S.C. § 1015(a). Other subsections of the same statute do criminalize behavior done with intent or in order to procure a benefit, but such intent is noticeably absent from the plain language of subsection § 1015(a). *Cf*. § 1015(b) (criminalizing "knowingly, with intent to avoid any duty or liability imposed or required by law," denying citizenship) and § 1015(e) (criminalizing knowingly making a false claim to citizenship "with the intent to obtain . . . any Federal or State benefit or service"). In the absence of an intent requirement or some other indication that a fraudulent state of mind is required, the Court finds no basis to conclude that a violation of § 1015(a) is inherently fraudulent.

The government also argues that a violation of § 1015(a) is "essentially naturalization-specific perjury," and that perjury is a well-accepted crime involving moral turpitude. Doc. 157 at 38. But materiality is an essential element of perjury, *Matter of S,* 2 I. & N. Dec. 353 (BIA 1945); *see also Bronston v. United States*, 409 U.S. 352, 355 (2000), and materiality is not required for a violation of § 1015(a), *United States v. Youssef*, 547 F.3d 1090, 1093 (9th Cir. 2008) ("The plain language of § 1015(a) does not require the false statement to be material.").

In sum, the Court concludes that a violation of § 1015(a) is not inherently fraudulent and does not include the element of materiality essential to perjury. As a result, the crime Li was convicted of committing is not categorically a crime involving moral turpitude.

1

**2.      Modified categorical approach.**

As noted above, if a crime is not categorically a crime involving moral turpitude, courts apply the modified categorical approach and "look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction," including the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of plea proceedings and the judgment. *Notash*, 427 F.3d at 697. The purpose of this inquiry is to identify, if possible, the precise crime that was committed, and the government carries the burden of showing that the conviction was for a crime involving moral turpitude. *Id.* at 698-700.

As already noted, Li admitted only to knowingly making "a" false statement. Because Li did not admit during the colloquy that she possessed a fraudulent intent, or sought to procure some benefits through her false statement, the Court cannot conclude from her admission that she committed a crime involving fraud and therefore a crime of moral turpitude. For reasons described above, the Court takes judicial notice only of Li's precise admission, not of other statements contained in her plea agreement.

Nor can the Court conclude that Li committed the equivalent of perjury. As noted above, perjury requires a false statement that is material, and the materiality of the false statement Li made was never an issue in her criminal case. As already noted, § 1015(a) does not require materiality. *Youssef*, 547 F.3d at 1093.

For these reasons, the Court concludes that Li's § 1015(a) conviction is not a crime of moral turpitude under the modified categorical approach. Review of the relevant documents from her 2009 conviction simply does not establish that the crime she committed involved fraud or was tantamount to perjury, and the government has provided no other basis on which to conclude that her conviction was for a crime involving moral turpitude.

The Court will grant summary judgment for Li on Count II. There is no further issue of fact to be decided on this claim. The issue is not whether the government could show Li's alleged false statements to be fraudulent or material at the trial in this case.

- 12 -

1   The issue is whether her 2009 conviction was for a crime of moral turpitude, an issue that

2   must be resolved by looking to that conviction.  Because the Court cannot conclude that

3   the conviction is a crime of moral turpitude under either the categorical or modified

4   categorical approaches, the Court concludes as a matter of law that it is not.

5           **C.      Count III – Bigamy as a crime involving moral turpitude.**

6           The government asserts that Li was not of good moral character during the

7   statutory period because she committed bigamy under California law by marrying Chen

8   while still married to Bambrough.  Bigamy is indeed a crime involving moral turpitude,

9   *Gonzales-Martinez v. Landon*, 203 F.2d 196, 197 (9th Cir. 1953), but it cannot alone

10  justify Li's denaturalization.  A single crime of moral turpitude cannot be grounds for

11  denaturalization if the maximum statutory sentence for the crime does not exceed one

12  year, and, if the person was convicted of the crime, the person did not receive a sentence

13  of more than six months.  8 U.S.C. § 1182(a)(2)(A)(ii)(II).  Bigamy is punishable under

14  California law by a prison term "not exceeding one year," Cal. Crim. Code § 283, and Li

15  was never convicted or imprisoned for bigamy.  Because bigamy is the only crime

16  alleged in Count III (Doc. 16 at 11-12), summary judgment will be granted for Li.

17          **D.      Count IV – Bigamy as evidence of bad moral character.**

18          The government alleges that Li illegally procured her citizenship because she

19  committed an unlawful act of bigamy that reflected adversely on her moral character

20  during the statutory period.  Doc. 16 at 10.  Specifically, the government cites 8 C.F.R.

21  § 316.10(b)(3)(ii), which provides that "unless the applicant establishes extenuating

22  circumstances, the applicant shall be found to lack good moral character if . . . the

23  applicant . . . Committed unlawful acts that adversely reflect upon the applicant's moral

24  character."  The government asserts that Li cannot establish extenuating circumstances

25  with regard to her commission of bigamy.  Doc. 16 at 10.

26          Li disputes that she ever committed bigamy.  She argues that she never intended to

27  marry Chen, that her wedding to Chen was a "mock" ceremony staged to appease

28  members of his family, and that she did not believe their marriage to be legitimate from a

legal standpoint.  Docs. 134, 135, ¶ 6.[3]  Li submits deposition testimony from Chen, who also asserts that they never intended to be legally married (Doc. 135, Ex. 10), an affidavit from Li's mother, Ruby Zhao, who states that she knew they never intended to marry (Doc. 135, Ex. 11), and an affidavit from Steve Greschner, a friend of Li's who later became her husband, stating that he also knew that Li and Chen never intended to legally marry (Doc. 135, Ex. 12).[4]  Li also testified in her own deposition that she did not intend to marry Chen.  Doc. 135-1 at 15.

The government has submitted many documents to show the nature of Li and Chen's relationship and their intent to marry and live as a married couple.  Doc. 152, ¶¶ 52-61, 71-101.  It has alleged that the ceremony was real, *id*., ¶¶ 102-118, and that after the ceremony Li and Chen held themselves out as husband and wife, as evidenced by numerous legal documents, *id*. ¶¶ 119-147.

The evidence presented by Li and the government creates an issue of fact as to whether Li and Chen intended to marry and therefore committed bigamy under California law.  Summary judgment will be denied for both sides.

### E.       Count V – Extramarital affair.

The government asserts that Li was not of good moral character during the statutory period because she engaged in an extramarital affair that had a tendency to destroy her marriage.  *See* 8 C.F.R. § 316.10(b)(3)(ii) ("Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [h]ad an extramarital affair which tended to destroy an existing marriage.").  There is no dispute that Li had an extramarital affair with Chen.  Li met Chen soon after she was married to Bambrough and began an affair

---

[3]  Li also argues that even if she had intended to marry Chen, the marriage would have been illegal and void because she was already married to Antony Bambrough.  Docs. 134, 135, ¶ 6.  This argument lacks merit.  A person can be party to an illegal marriage and still be prosecuted for bigamy under California law.  *Gersten v. C.I.R.*, 267 F.2d 195 (9th Cir. 1959).

[4]  The Court gives little weight to the affidavit from Li's mother given Li's own assertion in this litigation that her mother was not capable of being deposed due to mental health issues.

1    with Chen in 1998.  Doc. 135, ¶ 20.  In late 1998 or early 1999, she was pregnant with

2    her first child by Chen.  *Id.*, ¶ 21.

3        There is, however, a factual dispute as to whether the affair tended to destroy Li

4    and Bambrough's marriage.  Doc. 160 at 22.  Bambrough asserted in his deposition that

5    he found out about the affair when Li told him she was pregnant with another man's child

6    sometime in the spring of 1999, and that it was the affair that caused the end of his

7    marriage to Li.  Doc. 152, ¶ 39.[5]  Li, on the other hand, argues that the affair was not the

8    cause of her break-up with Bambrough.  Doc. 160 at 22.  She asserts that she left

9    Bambrough because he quit a job in 1998 against her wishes.  *Id.* at 23.  She also has

10   presented evidence that Bambrough accepted the relationship she had with Chen and that

11   the three of them got along well even after the affair came to light.  *Id.* at 22.

12       Whether the extramarital affair between Li and Chen had a tendency to destroy the

13   marriage is an issue of fact that must be resolved at trial.  Summary judgment is denied as

14   to both parties on this issue.

15   **F.     Count VI – Willful misrepresentation and concealment.**

16       The government argues that Li procured her citizenship by willfully concealing

17   and misrepresenting her marital status and the existence of her children, and that such

18   willful concealment and misrepresentation is a sufficient ground for denaturalization

19   under 8 U.S.C. § 1451(a).  Doc. 16 at 12.  Section 1451(a) contains four independent

20   requirements for revocation of citizenship based on concealment or misrepresentation:

21   (1) the naturalized citizen must have misrepresented or concealed some fact, (2) the

22   misrepresentation or concealment must have been willful, (3) the fact must have been

23

24       [5] Li objects to admission of the affidavit of Antony Bambrough because she
25   contends that the affidavit is inconsistent with his deposition and therefore should be
     disregarded under *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir 1991),
26   and *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543-44 (9th Cir. 1975).
     Doc. 161 at 2.  Both *Kennedy* and *Radobenko* concern situations in which a party to a
27   lawsuit attempted to defeat summary judgment by creating an issue of fact through
     submission of a sham affidavit.  Bambrough is not a party to this lawsuit, nor has Li
28   provided a basis for concluding that differences between his affidavit and deposition are
     "not the result of an honest discrepancy, a mistake, or the result of newly discovered
     evidence."  *Kennedy*, 952 F.2d at 266-67.

1    material, and (4) the naturalized citizen must have procured citizenship as a result of the

2    misrepresentation or concealment.  *Kungys*, 485 U.S. at 767.

3            In its motion for summary judgment, the government alleges several false

4    statements on Li's N-400 and in her naturalization interview, including that she

5    concealed the existence of her children and misrepresented her marital history.  Doc. 157

6    at 47-49.   The government relies primarily on Li's 2009 conviction as a basis for

7    summary judgment on Count VI, but also argues from the evidence that Li lied about

8    having no children and about her marital history.  *Id.*

9            The Court cannot grant summary judgment on this count.  If the 2009 conviction

10   is not considered, the factual disputes discussed above prevent the Court from concluding

11   that Li knowingly made false statements concerning her marital status.  Li also disputes

12   that she knowingly failed to disclose her children, contending that she misunderstood the

13   requirements of the naturalization form.

14           If the 2009 conviction is considered, the government still has not established its

15   right to summary judgment.   Although Li admitted to knowingly making a false

16   statement, she did not identify the false statement and the Court therefore cannot take

17   judicial notice that she admitted any particular false statement.  As a result, even if the

18   Court could conclude from Li's conviction that the first two requirements of § 1451(a)

19   are met – a misrepresentation of fact that is willful – the Court could grant summary

20   judgment for the government on this count only if it could also conclude that each of the

21   alleged misrepresentations was material and resulted in her procuring citizenship, the

22   third and fourth requirements under § 1451(a).  Stated differently, because the record

23   from the 2009 conviction does not reveal which false statement Li admitted, the Court

24   would have to conclude that all of the possible false statements satisfy the materiality and

25   causation requirements of § 1451(a) before summary judgment could be entered.  The

26   Court cannot reach such a conclusion.

27           The parties have presented conflicting evidence on whether the failure to disclose

28   Li's children in the immigration process was material to or resulted in her naturalization.

1  Docs. 172-1 at 13, 170-2 at 5-10.  This factual issue on one of the alleged false statements

2  prevents the Court from granting summary judgment for the government.[6]

3  **V.      Request for stay.**

4          Li asks the Court to stay these proceedings pending resolution of a habeas petition

5  she has brought in the United States District Court of the Northern District of California

6  challenging the validity of her 2009 conviction.  Doc. 160 at 2.  Li contends that the

7  California court has not reached the merits of her petition because the petition was

8  dismissed on procedural grounds, and that she has since filed a Rule 59 motion to amend

9  the judgment.  *Id.*

10         A district court has the inherent power to stay proceedings, and whether to grant a

11  stay is within the court's discretion and appropriate when it serves the interests of judicial

12  economy and efficiency.  *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal.

13  1997) (citing *Weisman v. Se. Hotel Prop. Ltd.*, No. 91-6232, 1992 WL 131080, at *6

14  (S.D.N.Y. June 1, 1992)).  The power to stay is "incidental to the power inherent in every

15  court to control the disposition of the causes on its docket with economy of time and

16  effort for itself, for counsel, and for litigants."  *Rivers*, 980 F. Supp. at 1360 (quoting

17  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Gold v. John-Manville Sales Corp.*, 723

18  F.2d 1068, 1077 (3d Cir. 1983).  When considering a motion to stay, the district court

19  should consider three factors: (1) potential prejudice to the non-moving party;

20  (2) hardship and inequity to the moving party if the action is not stayed; and (3) the

21  judicial resources that would be saved by avoiding duplicative litigation if the cases are in

22  fact consolidated.  *Rivers*, 980 F. Supp. at 1360, (citing *Am. Seafood v. Magnolia

23  Processing, Inc.*, Nos. 92-1030, 92-1086 , 1992 WL 102762, at *1-2 (E.D. Penn. May 7,

24  1992)).

25         Li's habeas petition was denied by the California federal court as untimely.

26  *United States v. Li*, 5:09-CR-00177-EJD-1, 2013 WL 6140860 (N.D. Cal. Nov. 21,

27

28         [6] Materiality is a question for the Court, but it "rests upon a factual evidentiary showing" that is now in dispute and will be resolved at trial.  *Kungys*, 485 U.S. at 772 (citation and quotation marks omitted).

1  2013).  Li's motion to amend simply asks the court to grant her a certificate of

2  appealability so she can appeal the dismissal to the Ninth Circuit.  If the motion is

3  granted and Li appeals, the appeal could take one or two years to resolve.  If she prevails

4  on her argument that the petition was timely, the case would return to the district court

5  and start over, a process that could take several more years.  The unsuccessful party then

6  would almost surely appeal to the Ninth Circuit, a process that could again take years to

7  resolve.  Thus, even if Li were ultimately to prevail, the process could take six or more

8  years to complete.  Although the Court understands that much is at stake here for Li, the

9  government also has an interest in seeing this case resolved, and a delay of many years

10  would prejudice its position as evidence grew stale and memories faded.

11       To evaluate hardship to Li if a stay is denied, the Court has reviewed her filings in

12  the habeas proceeding.  The Court finds it unlikely that Li will prevail in her arguments

13  that she had an available affirmative defense that counsel did not advise her of, and that

14  she did not know her conviction could have serious immigration consequences.  The

15  affirmative defense that Li alleges her lawyer failed to inform her of is that, because

16  California law voids any bigamous marriage, she could have asserted that her statements

17  about her marriage on her naturalization form were true.  But she made a similar

18  argument in this proceeding (Docs. 134, 135, ¶ 6) and the Court found above that it lacks

19  merit because a person can be party to an illegal marriage that is void and still be guilty

20  of bigamy.  *Gersten*, 267 F.2d at 195.  As to her argument that she was not advised of the

21  immigration consequences of her plea, in addition to the fact that her 2009 lawyer admits

22  having told her that a challenge to her naturalization was a possible (albeit unlikely)

23  consequence of her conviction (Doc. 158 at 130), the prosecutor specifically stated during

24  her change-of-plea hearing that the government could attempt to revoke her citizenship

25  on the basis of her conviction (Doc. 158-8 at 122).  She nonetheless went forward with

26  her guilty plea.

27       Because the Court finds it unlikely that Li will prevail on her habeas claim, the

28  Court concludes that the hardship she will experience as a result of this Court's denial of

her stay request does not outweigh the multi-year delay the government would endure if a stay were granted.

Finally, the Court's serious doubts about the merits of Li's habeas petition causes it to conclude that judicial resources are not likely to be saved by delaying this case.

Li's unappealed conviction is final for purposes of this proceeding. *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 403 (2001). The Court concludes that this action should not be stayed while Li pursues habeas relief in other courts.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 134) is **granted** as to Counts II and III and **denied** as to Counts, I, IV, V, and VI as set forth above.

2. Plaintiff's motion for summary judgment (Doc. 157) is **denied**.

3. The Court will set a final pretrial conference by separate order.

Dated this 6th day of March, 2014.

David G. Campbell
United States District Judge